## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

*United States of America v. Nathan Michael Klinger*
Case No. 3:19-cr-00033-01-TMB

By:             THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS:      ORDER FROM CHAMBERS

The matter comes before the Court on the Defendant Nathan Michael Klinger's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A) at Docket 75 (the "Motion"),[1] and Motion to Supplement Motion and Memorandum for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Motion to Supplement").[2] The Motion to Supplement is accepted as a supplement to Klinger's Motion. In the Motion, Klinger argues that his underlying health conditions, coupled with his risk of contracting the novel coronavirus ("COVID-19") while incarcerated, provide extraordinary and compelling bases for a sentence reduction.[3] The United States opposes the Motion.[4] For the reasons discussed below, the Motion is **DENIED**.

### A. Background

On December 9, 2019, Klinger pleaded guilty to Distribution of a Controlled Substance, in violation 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[5] On March 10, 2020, the Court sentenced Klinger to a 96-month term of imprisonment, with 5 years of supervised release to follow.[6] Klinger is currently housed at the Federal Correctional Institution Sheridan ("FCI Sheridan") in Sheridan, Oregon.[7] His projected release date is February 6, 2026.[8]

### B. Motion for Compassionate Release

In the Motion, Klinger argues that he can establish extraordinary and compelling grounds that warrant a reduction in his sentence due to the unacceptably high risk he faces from the COVID-19 pandemic at FCI Sheridan, particularly in light of the emergence of the Delta variant and his

---

[1] Dkt. 75 (Motion).
[2] Dkt. 85 (Motion to Supplement) (Klinger offers additional information to support his claim that the risk of contracting COVID-19 has increased significantly at the facility where he is being held).
[3] *See generally* Dkt. 75.
[4] Dkt. 78 (Opposition).
[5] Dkts. 2 (Indictment); 57 (Plea Agreement); 59 (Minute Entry).
[6] Dkts. 68 (Minute Entry); 71 (Judgment); 72 (Sealed Statement of Reasons).
[7] Dkt. 75 at 2.
[8] Dkt. 82 at 10 (Sealed Exhibits A – D to Motion).

1

underlying health conditions.[9] Klinger, age 39, represents that he was diagnosed with asthma and hepatitis C, and that he experiences "chronic back pain" as a result of a fall in 2012 in "which he fractured his T-12-L2 vertebrae."[10] Klinger also asserts that he faces a serious risk of contracting COVID-19 due to the heightened risk inmates face in confinement and the failure of the Bureau of Prisons ("BOP") to control COVID-19 transmission at FCI Sheridan.[11]

As further justification for an early release, Klinger argues that the approximately two years that he has already served of his sentence is sufficient to accomplish the goals of sentencing and that he would not present a danger to the community if he were to be released.[12] Klinger further represents that he "has been an exceptional inmate," maintaining employment and participating in vocational, rehabilitative, and educational programming.[13] If released, Klinger intends to reside with his girlfriend and her mother while seeking employment in the carpentry or construction industries while continuing to seek medical care and drug treatment.[14]

Finally, Klinger argues that he has fully exhausted his administrative remedies.[15] Klinger asserts that he submitted a request for compassionate release to the Warden of his facility on September 15, 2020, but never received a response.[16] Klinger requests that if the Court finds that he has not exhausted his administrative remedies, the Court excuse him from the exhaustion requirement because to prolong the process would only increase the risk that Klinger may be infected with COVID-19.[17]

The United States opposes the Motion and argues that Klinger should not be released because Klinger (1) cannot establish extraordinary and compelling grounds warranting his release, (2) presents a danger to the community, and (3) has a significant amount of time remaining on his sentence.[18] The United States argues that Klinger is not eligible for release because he has not identified any documented risk factors or chronic ailments.[19] Moreover, the United States argues that even if Klinger had established a condition that made him vulnerable to a heightened risk of COVID-19, he can no longer establish an extraordinary or compelling reason for his release because he received "the first dose of the COVID-19 vaccine produced by Moderna."[20] Further, Klinger's unexplained refusal to receive the second dose of the Moderna vaccine weighs against a finding of extraordinary and compelling circumstances.[21] Next, the United States argues that Klinger's prior conduct, including the nature of his convictions, a prior escape from custody, and

---

[9] Dkts. 75 at 14–19; *see also* 85 at 1.
[10] Dkt. 75 at 2, 18.
[11] *See* Dkts. 75 at 14–18; *see also* 85.
[12] Dkt. 75 at 19–21.
[13] *Id.* at 20.
[14] *Id.* at 21.
[15] *See id.* at 5–9.
[16] *Id.* at 6.
[17] *Id.* at 10.
[18] Dkt. 78 at 1.
[19] *Id.* at 6–7.
[20] *Id.* at 7.
[21] *Id.* at 14–15.

a dangerous high-speed chase, demonstrates that he is not a suitable candidate for early release.[22] Finally, the United States argues the Court must consider the relevant factors in 18 U.S.C. § 3553(a) before granting early release and that to release Klinger nearly five years early "would not reflect the seriousness of his conduct, promote respect for the law, be just, or deter criminal conduct."[23]

Further, the United States acknowledges that it cannot be certain whether Klinger has exhausted his administrative remedies.[24] According to the United States, the BOP has not produced a record of Klinger's compassionate release request.[25] Nevertheless, the United States recognizes that the absence of a record does not necessarily mean that a request was never made.[26] For this reason, the United States disputes whether Klinger has exhausted his administrative remedies but concedes that it cannot be certain.

In the Motion to Supplement, Klinger reiterates his concern for his own safety at FCI Sheridan and alleges that two buildings were locked down by the BOP in response to "positive cases of the new [D]elta variant."[27]

### C. Legal Standard

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a defendant may move the district court for a sentence reduction after exhausting their administrative remedies.[28] The court may grant the motion if, after considering the applicable factors set forth in 18 U.S.C. § 3553(a), it finds "extraordinary and compelling reasons warrant such a reduction[.]"[29] For guidance, the court may look to the Sentencing Commission's policy statement on compassionate release found in U.S.S.G. § 1B1.13.[30] The policy statement provides that "extraordinary and compelling reasons" may exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to

---

[22] *Id.* at 15.
[23] *Id.* at 15–16.
[24] *Id.* at 3 (the government concedes that "[i]t is unclear whether Klinger has satisfied the exhaustion requirement, and whether his motion is properly before the Court.").
[25] *Id.*
[26] *Id.*
[27] Dkt. 85 at 1.
[28] *See* Pub. L. 115-391, 132 Stat. 5194, 5239 (2018).
[29] 18 U.S.C. § 3582(c)(1)(A).
[30] *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) ("The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding.").

3

recover."³¹ However, the policy statement is "not binding" on courts evaluating motions filed by defendants under 18 U.S.C. § 3582(c)(1)(A).³²

### D. Discussion

As a threshold matter, the Court finds that Klinger exhausted his administrative remedies as is required by 18 U.S.C. § 3582(c)(1)(A). The Ninth Circuit is clear "that § 3582(c)(1)(A)'s administrative exhaustion requirement is mandatory and must be enforced when properly raised by the government."³³ While no party has provided evidence that Klinger submitted a request for compassionate relief to the Warden, Klinger asserts that he sent a request for compassionate release to the Warden at FCI Sheridan on September 15, 2020.³⁴ Courts have accepted such assertions where a court has no reason to assume bad faith on the part of the defendant or their counsel.³⁵ Here, the Court has no reason to assume that Klinger or his counsel have acted in bad faith. Moreover, the United States acknowledges the fact that it does not have a copy of Klinger's request does not mean that a request was never made.³⁶ More than thirty days have passed since Klinger asserts he made a request, and the Warden has not granted relief. Accordingly, the Court is satisfied that it may consider the merits of Klinger's Motion.

Proceeding to the merits, the Court finds that Klinger has not demonstrated extraordinary and compelling reasons to justify his release. Klinger initially argues that extraordinary and compelling reasons justify his release because the BOP has been unable to control COVID-19 infections among inmates and staff, including at FCI Sheridan.³⁷ But without identifying other risk factors, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence."³⁸

---

³¹ 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13. The Ninth Circuit recently held that the current version of U.S.S.G. § 1B1.13 is "not an applicable policy statement for 18 U.S.C. § 3582(c)(1)(A)." *Aruda*, 993 F.3d at 802 (internal quotation marks omitted). The Ninth Circuit also concluded that a "dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i)[.]" *Id.* at 799.
³² *Aruda*, 993 F.3d at 802.
³³ *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).
³⁴ Dkt. 75 at 3, 6.
³⁵ *See United States v. Levario*, No. 2:12-CR-00399-JAM-1, 2020 WL 3256918, at *2 (E.D. Cal. June 16, 2020) (accepting as true defendant's representation that he requested compassionate release from the Warden where the court had no reason to assume bad faith on the part of defendant or counsel); *United States v. Richardson*, No. 2:17-cr-00048-JAM, 2020 WL 3402410, at *2 (E.D. Cal. June 19, 2020); *United States v. Massengill*, Case No. 3:17-cr-00091-02-TMB, (closed April 11, 2019) (Dkt. 146).
³⁶ *See* Dkt. 78 at 3.
³⁷ Dkts. 75 at 1–2, 15–18; *see also* 85 at 2.
³⁸ *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020).

4

Likewise, the Court rejects Klinger's argument that his age and medical conditions, including asthma and hepatitis C diagnoses, are risk factors making him eligible for compassionate release.[39] First, Klinger's own medical records do not reflect that he has been diagnosed with asthma or hepatitis C, and in the past Klinger has allegedly denied having hepatitis.[40] Second, even if Klinger had been diagnosed with asthma in the past, only those individuals with moderate to severe asthma may be more likely to become severely ill from COVID-19.[41] Therefore, courts routinely deny motions for compassionate release where a defendant's asthma was mild.[42] Third, Klinger's alleged chronic back pain is not a recognized medical condition that can increase an individual's risk of severe illness from COVID-19.[43] Finally, as a 39 year old man, Klinger's age does not place him at a heightened risk of severe illness or death from COVID-19. The Centers for Disease Control and Prevention ("CDC") states that "[t]he risk increases for people in their 50s and increases in 60s, 70s, and 80s."[44]

But regardless of Klinger's age and medical conditions, the Court finds that vaccine availability and an inmate's refusal of a COVID-19 vaccine weigh against finding extraordinary and compelling circumstances justifying Klinger's release.[45] The CDC recommends that adults, including older adults, "[g]et vaccinated as soon as possible."[46] Though Klinger received the first dose of the Moderna COVID-19 vaccine, he, without explanation, refused the second dose.[47] Klinger is not considered to be fully vaccinated after having received a single dose of the Moderna

---

[39] Dkts. 75 at 2; *see also* 82 at 2–8.
[40] Dkts. 78 at 6; *see also* 82 at 2–8.
[41] Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021).
[42] *See United States v. Bozochovic*, No. 4:17-CR-00046, 2021 WL 76153, at *3 (M.D. Pa. Jan. 8, 2021) (denying defendant's motion for compassionate release due to the lack of severity of his asthma and finding moderate asthma occurs "where the individual suffers from daily symptoms, experiences nighttime awakenings more than once a week, uses an Albuterol rescue inhaler on a daily basis, and experiences some limitation of normal activities."); *see also United States v. Person*, Criminal Action No. 15-10146-NMG, 2021 WL 24571, at *1–2 (D. Mass. Jan. 4, 2021) (denying motion for compassionate release because asthma was mild).
[43] Dkt. 75 at 2; *see also* Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021).
[44] *See* Centers for Disease Control and Prevention, COVID-19 Risks and Vaccine Information for Older Adults, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last updated Aug. 2, 2021); *see also* Dkt. 75 at 18 n.43.
[45] *United States v. Baeza-Vargas*, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021).
[46] *See* Centers for Disease Control and Prevention, COVID-19 Risks and Vaccine Information for Older Adults, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last updated Aug. 2, 2021).
[47] Dkts. 78 at 14–15; *see also* 82 at 6.

COVID-19 vaccine.[48] But, the Court agrees with the United States and other recent district court decisions that find an inmate's refusal of a COVID vaccine, "weighs against a finding of extraordinary and compelling circumstances."[49] The Court does not wish to incentivize inmates to refuse a safe and effective vaccine in order to create extraordinary and compelling circumstances where none otherwise exist.[50] Even though it is apparent from Klinger's filings that COVID-19 transmission continues to occur among FCI Sheridan's staff and inmates, "COVID-19 vaccines also help keep [individuals] from getting seriously ill even if you do get COVID-19."[51] The vaccines also have been shown to remain effective against the variants of the virus, including the Delta variant.[52] Accordingly, Klinger has failed to show "extraordinary and compelling reasons" justifying his release pursuant to 18 U.S.C. § 3582(c)(1)(A).

Klinger has not made the required showing that his medical conditions, coupled with his refusal to be fully vaccinated against COVID-19, are "extraordinary and compelling." As a result, the Court need not reach the merits of his § 3553(a) arguments.

Accordingly, for the foregoing reasons, the Motion at Docket 75 is **DENIED**.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: October 29, 2021.

---

[48] *See* Centers for Disease Control and Prevention, When You've Been Fully Vaccinated, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last updated Sept. 16, 2021).

[49] *See, e.g.*, *Baeza-Vargas*, 2021 WL 1250349, at *2–3 (collecting cases).

[50] *See United States v. Figueroa*, No. 2:09-CR-00194-KJM, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2021) ("If defendants could buttress their motions for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive."); *United States v. Cao*, No. 3:18-cr-00059-SLG, 2021 WL 1792056, at *1 n.15 (D. Alaska, May 5, 2021); *see also United States v. Cortez*, No. CR-18-00858-01-PHX-SPL, 2021 WL 689923, at *1 (D. Ariz. Feb. 23, 2021) (as other courts have noted, "[t]he Pfizer vaccine has proven to be 95% effective in preventing infection and even more effective in preventing severe disease.") (citing FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download).

[51] Centers for Disease Control & Prevention, Benefits of Getting Vaccinated, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last updated Aug. 16, 2021).

[52] Centers for Disease Control & Prevention, When You've Been Fully Vaccinated, www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last updated Sept. 16, 2021).